IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

AAI CORPORATION,                 *

   Plaintiff                     *

v.                               *           CIVIL NO. JKB-11-608

APPLIED GEO TECHNOLOGIES, INC.,  *

   Defendant                     *

                                                  *

\* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM

AAI Corporation ("Plaintiff") brought this suit against Applied Geo Technologies, Inc. ("Defendant") alleging breach of contract, unjust enrichment, *quantum meruit*, tortious interference, and unfair competition. Defendant now moves to transfer the case to the Southern District of Mississippi. The issues have been briefed and no oral argument is required. Local Rule 105.6. For the reasons explained below, Defendant's Motion to Transfer (ECF No. 10) is DENIED.

    **I.**    **BACKGROUND**

Plaintiff is a government defense contractor with a principal office in Hunt Valley Maryland. Defendant is a corporation of the Tribal Counsel of the Mississippi Band of Choctaw Indians with a principal office in Choctaw, Mississippi. Prior to this suit, Plaintiff and Defendant worked together on several procurement projects under the auspices of the Small Business Administration's Mentor-Protégé program, with Plaintiff as mentor and Defendant as protégé.

1

In 2007, Plaintiff and Defendant agreed to work together on a contract with the U.S. Navy to design and manufacture hand-held radar simulators ("HRS"). They agreed that Defendant would act as the prime contractor with the Navy, and would enter a separate subcontract ("The Subcontract") with Plaintiff to perform part of the work. Under The Subcontract, Plaintiff was to design and test five "pilot" HRS units, while Defendant, as prime contractor, would manufacture additional units as demanded by the Navy.

According to Plaintiff, The Subcontract specified that it would design the pilot units using an "iterative" process, whereby it would submit its design to Defendant for approval at various "milestones" throughout the development process. Plaintiff also alleges that The Subcontract required the parties to negotiate in good faith to make any necessary modifications to its terms and to make an "equitable adjustment" following any change that affected the cost or schedule of performance. (Compl. 3-4 ¶ 11, ECF No. 1).

Plaintiff claims that it completed several milestones between September 2008 and August 2010, including a Test Readiness Review ("TRR") in June of 2010. It further claims that after the TRR both Defendant and the Navy approved all elements of the design and that Defendant gave it verbal authorization to begin integration and testing. However, Plaintiff alleges that in the following months Defendant revoked its authorization, stating that it did not approve the design and that the TRR was not complete. Defendant then allegedly demanded that Plaintiff incorporate certain "out-of-scope hardware and software features" before it would allow development to proceed. (Compl. 4 ¶ 14). Plaintiff claims that it notified Defendant that it believed the new features were beyond the scope of The Subcontract and that incorporating them would require additional time and money. Defendant, however, allegedly maintained that the

new features were within the scope of The Subcontract and refused to negotiate an adjustment to the existing contract price or schedule.

Plaintiff also alleges that a dispute arose as to its property rights in the components it designed. Under The Subcontract, certain components were to remain proprietary to Plaintiff unless it became insolvent. In its "technical data package," Plaintiff marked these components first as "proprietary" and later as "limited/restricted" in accordance with government regulations. Plaintiff alleges that it later came to believe that it had "limited/restricted" rights in additional components, and that it marked its subsequent drawings to reflect these claims. Defendant, however, allegedly disputed the claims and refused to allow work on The Subcontract to continue until Plaintiff abandoned them.

On or about December 10, 2010, believing Plaintiff to be in breach of The Subcontract, Defendant sent Plaintiff a "cure notice" identifying alleged deficiencies in its performance and requesting a "corrective action plan." (Def.'s Answer & Countercl. 6 ¶ 48, ECF No. 8). Plaintiff alleges that it responded to the notice by asserting that it had substantially completed the design and development of the HRS units, excepting those features it considered to be out-of-scope. Finding the response inadequate, Defendant issued Plaintiff a notice of default and terminated The Subcontract for alleged breach.

On March 7, 2011, Plaintiff filed suit in this Court, alleging breach of contract, unjust enrichment, *quantum meruit*, tortious interference, and unfair competition, and seeking declaratory relief and damages. Defendant filed a counterclaim alleging that Plaintiff itself breached The Subcontract by failing to submit a satisfactory response to its "cure notice" and failing to deliver the promised HRS units. Shortly after filing its counterclaim, Defendant filed

the instant motion, alleging that venue is inconvenient for it in this district and seeking to transfer the case to its home forum, the Southern District of Mississippi.

## II. STANDARD OF REVIEW

Review of a motion to transfer venue is governed by 28 U.S.C. § 1404(a), which provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The moving party bears the burden of establishing that transfer to another venue is proper. *TECH USA, Inc. v. Evans*, 592 F.Supp.2d 852, 857 (D. Md. 2009). Unless the moving party can carry this burden by demonstrating that convenience and justice weigh strongly in his favor "the plaintiff's choice of forum should rarely be disturbed." *Mamani v. Bustamante*, 547 F.Supp.2d 465, 469 (D. Md. 2008) (citing *Collins v. Straight, Inc.*, 748 F.2d 916, 921 (4th Cir. 1984)). Ultimately, the decision whether to transfer venue is committed to the discretion of the Court. *CoStar Realty Information, Inc. v. Meissner*, 604 F.Supp.2d 757, 770 (D. Md. 2009).

## III. ANALYSIS

Both parties have requested a hearing on this matter, but the Court finds no material disputes of fact in the parties' briefs that would require resolution by hearing. The Court will therefore rule on the parties' written submissions alone.

### 1. Venue in the District of Maryland - 28 U.S.C. § 1391(a)

Federal jurisdiction in this case is based solely on diversity of citizenship. (Compl. 3 ¶ 7). As such, venue is proper "where Defendant resides" or where "a substantial part of the events or omissions giving rise to the claim occurred." *See* 28 U.S.C. § 1391(a) (West 2011). Plaintiff has proffered evidence, which Defendant does not dispute, that it conducted all of its design operations at its facility in Hunt Valley, Maryland, that Defendant's technical

representative visited the Hunt Valley facility on a regular basis, and that all program reviews (i.e., "milestone" reviews) took place at the Hunt Valley facility and were attended by both Defendant and Navy personnel. (Butler-James Aff. ¶¶ 3, 6, 7, ECF No. 15-4, Ex. 3). The Court finds that this, alone, is quite sufficient to demonstrate that a substantial part of the events underlying this case took place in Maryland and that venue is therefore proper in this district. In its motion to transfer, Defendant alleges that various other events took place in Mississippi, including Plaintiff's alleged failure to deliver the completed HRS units. Even taking these allegations as true, however, this shows only that venue would *also* be proper in Mississippi, which, in any event, is already established by virtue of Defendant's residence in that state.

### 2. Transfer of Venue - 28 U.S.C. § 1404(a)

There being no question that venue is proper in this district, Defendant bears the burden of demonstrating by a preponderance of the evidence that this case more properly belongs in the Southern District of Mississippi. *See Jones v. Koons Automotive, Inc.*, 752 F.Supp.2d 670, 680 (D. Md. 2010) (citations omitted). Factors relevant to this inquiry include: (1) the weight accorded to the plaintiff's choice of venue, (2) witness convenience and access, (3) convenience of the parties, and (4) the interest of justice.[1] *Davis Media Grp., Inc. v. Best Western Int'l, Inc.*, 302 F.Supp.2d 464, 470 (D. Md. 2004) (citation omitted). Importantly, Defendant cannot carry its burden by providing "[m]ere assertions of inconvenience or hardship," but rather must support these assertions with evidence, such as "affidavits from witnesses and parties explaining the hardships they would suffer if the case were heard in the plaintiff's chosen forum." *See CoStar*, 604 F.Supp.2d at 770 (internal quotation marks and citation omitted). Furthermore, a

---

[1] Although some courts formulate the analysis differently, *see, e.g., See Jones v. Koons*, 752 F.Supp.2d at 681 n.7 (listing eleven factors), the content of the various formulations is the same. *See, e.g. Elliot AmQuip, LLC v. Bay Elec. Co.*, Civil Action No. ELH-10-3598, 2011 WL 2174893 at *4 n.12 (D. Md. June 2, 2011) (citing 15 CHARLES ALAN WRIGHT, ET AL., FED. PRAC. & PROC. CIV. § 3847 (3d ed. 2007) ("Although various federal courts have identified different numbers of factors, the judicial approaches are quite similar overall.")).

transfer should not be granted if it will merely shift the inconvenience from one party to another. *See Penn-Plax, Inc. v. L. Schultz, Inc.*, 988 F.Supp.2d 906, 912 (D. Md. 1997).

### A. Plaintiff's Choice of Venue

A Plaintiff's choice of venue, if proper, is entitled to substantial weight, and should not ordinarily be disturbed without a very compelling justification. *See Mamani v. Bustamante*, 547 F.Supp.2d at 469, 473 (citations omitted). That weight is lessened, however, if a plaintiff chooses a venue that is not its home or that is not significantly connected with the events giving rise to the litigation. *D2L Ltd. v. Blackboard, Inc.*, 671 F.Supp.2d at 779 (quotation marks and citation omitted).

Here, there is no dispute that Maryland is Plaintiff's home venue. Defendant argues, however, that its own contacts with Maryland throughout the course of performing the Subcontract were "minimal," and that "[t]he predominant activities under the Subcontract… occurred or were to occur in Mississippi." (Def.'s Mot. Trans. 4, ECF No. 10). In support of this contention, Defendant proffers that The Subcontract was negotiated and executed in Mississippi, that Plaintiff was to deliver its final product to Defendant's facility in Mississippi, and that Plaintiff has had "substantial and continuing contacts with Mississippi," both in person and via telephone and mail. Defendant also makes much of the fact that it has alleged that Plaintiff breached The Subcontract by failing to deliver compliant HRS units to its Mississippi facility. As already explained above, however, these allegations, even taken as true, show only that this litigation has a substantial connection to Mississippi. Defendant has alleged no facts whatever to negate Plaintiff's assertion that both parties also engaged in substantial activities in Maryland. There are thus no grounds for denying Plaintiff's choice of venue the substantial weight to which such choices are ordinarily entitled.

### B. Witness Convenience and Access

The convenience of the witnesses is typically considered the most important factor to weigh against a plaintiff's chosen venue. *Mamani v. Bustamante*, 537 F.Supp.2d at 473. However, "[t]he party asserting witness inconvenience has the burden to proffer, by affidavit or otherwise, sufficient details respecting the witnesses and their potential testimony to enable the court to assess the materiality of evidence and the degree of inconvenience." *D2L Ltd. v. Blackboard, Inc.*, 671 F.Supp.2d at 780 (D. Md. 2009) (internal quotation marks and citation omitted).

Defendant argues that the convenience of its witnesses weighs in favor of transferring the case to Mississippi, because a number of its potential non-party witnesses reside there and are not subject to compulsory process in Maryland. However, the only evidence that Defendant proffers on this point is a paragraph in a three-page affidavit from its interim contracts manager, Wesley Cooper, that identifies seven of Defendant's former employees who currently reside in Mississippi and who "participated in the formation or administration of the AGT/AAI Subcontract in various roles." (Cooper Aff. 2 ¶ 7, ECF No. 10-1, Ex. 1). Defendant provides no facts whatever that would allow the Court to assess the materiality of these witnesses' testimony or the inconvenience to them of traveling to Maryland.[2] Defendant has thus failed to

---

[2] Defendant argues that it is not obligated to provide any such facts at this early stage in the litigation. In support, it cites a case from the Eastern District of Virginia, *Koh v. Microtek Int'l, Inc.*, 250 F.Supp.2d 627 (E. D. Va. 2003), in which the court wrote that "there is a tension in transfer motions between the duty to file such motions early in the action and the need to support that motion with affidavits identifying witnesses and the materiality of their testimony, information which may not be known until later in the case." *Id* at 636. The *Koh* court, however, did not purport to relieve the moving party of the burden of establishing *any* facts about the witnesses it alleged would be inconvenienced. Indeed, the court observed that the movants had identified several parties in the transferee district who "participated in conception and reduction to practice of the accused product, *and all of whom appear to have evidence respecting whether the accused product was initially abandoned, suppressed, or concealed, and if so, for how long*." *Id* at 637 (emphasis added). By contrast, Defendant here offers no clue as to what material information its non-party witnesses possess, asserting merely that they "participated in the formation or administration" of The Subcontract "in various roles." (Cooper Aff. 2 ¶ 7). *Koh* is therefore distinguishable from this case. On the other hand, the decisions in this district confirming a defendant's burden to support arguments of witness inconvenience with specific evidence are numerous. *See D2L Ltd. v. Blackboard, Inc.*, 671 F.Supp.2d 768, 780 (D. Md. 2009)

demonstrate any significant inconvenience to its witnesses that would diminish the weight accorded to Plaintiff's chosen venue.

### C. Convenience of the Parties

Defendant claims that it would be inconvenienced by having to litigate in this district because it has no offices or facilities here, none of its potential witnesses reside here, and all of its records are located in Mississippi. This argument lacks weight, as the venue statute plainly provides that venue can be proper in a district other than where the defendant resides. *See* 28 U.S.C. § 1391(a). Furthermore, Defendant has offered no explanation of why Plaintiff would be any less inconvenienced if it were forced to litigate in Mississippi. It does not appear that Plaintiff has any offices in Mississippi or that any of its potential witnesses reside there, and it has proffered that all of its records are located at its facility in Maryland. As already stated, transfers of venue are not available merely to shift inconvenience from one side to another. *See Penn-Plax*, 988 F.Supp.2d at 912.

### D. Interests of Justice

The "interests of justice" analysis "is intended to encompass all those factors bearing on transfer that are unrelated to convenience of witnesses and parties." *Cross v. Fleet Reserve Ass'n Pension Plan,* 383 F.Supp.2d 852, 857 (D. Md. 2005) (citation omitted). Among other things, these factors include the respective courts' familiarity with applicable law. *Jones v. Koons*, 752 F.Supp.2d at 681 n.7.

---

(internal quotation marks and citation omitted); *Doka USA, Ltd. v. Gateway Project Management, LLC*, Civil No. WDQ-10-1896, 2011 WL 3236091 at *9 (D. Md. July 27, 2011) (unpublished) (internal quotation marks and citation omitted); *Laureate Educ., Inc. v. Megahed*, Civil No. AW-10-749, 2010 WL 2651895 at *10 (D. Md. July 1, 2010) (unpublished) (internal quotation marks and citation omitted); *Richter Cornbrooks Gribble, Inc. v. BBH Design, P.A.*, Civil No. WDQ-09-1711, 2009 WL 5108863 at *2 (D. Md. Dec. 17, 2009) (unpublished) (internal quotation marks and citation omitted); *Tse v. Apple Consumer, Inc.*, Civil No. L-05-2149, 2006 WL 2583608 at *3 (D. Md. Aug. 31, 2006) (unpublished) (internal quotation marks and citation omitted).

Defendant proffers that The Subcontract is governed by Mississippi law "except for a breach of contract claim to which federal common law of government contracts shall apply." (Def.'s Mot. 9). Therefore, it argues, the parties' competing breach of contract claims will be governed by federal law, which courts in either venue would be equally comfortable in applying, but Plaintiff's tort claims will be governed by the law of Mississippi, about which a district judge in that state would presumably be more knowledgeable. It is not at all clear to this Court that The Subcontract purports to provide a choice of law for tort claims that do not involve interpretation of the contract's terms. However, even if it does, the fact that a Mississippi judge may have an advantage over this Court in applying Mississippi state law to some of the claims in this case, while certainly weighing in Defendant's favor, is not a sufficient reason by itself to warrant a transfer of venue.

IV. **CONCLUSION**

Accordingly, an order shall issue DENYING Defendant's Motion to Transfer (ECF No. 10).

Dated this 22nd day of August, 2011

BY THE COURT:

/s/
James K. Bredar
United States District Judge